IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| KASSAB JEWELERS, INC., an Oregon corporation | ) ) ) | Civil No. 05-265-MO |
| Plaintiff, | ) ) ) | ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |
| vs. | ) ) | |
| C. KASSAB DESIGNS, LLC, an Oregon limited liability company, and CHELLIS KASSAB, | ) ) ) ) | |
| Defendants. | ) ) | |

**MOSMAN, J.,**

Before the court is plaintiff's motion for a preliminary injunction that seeks to enjoin defendants from using "Kassab" in their trade name, trademarks, and service marks.

**BACKGROUND**

In 1975, Pierre Kassab along with his three brothers and

PAGE 1 - ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

father, started Kassab Bros. Jewelry. (Declaration of Pierre Kassab, ¶ 2). In 1985, that business was dissolved. (Id.) In 1987, Pierre Kassab formed Kassab Jewelers, Inc. which opened a retail store in Beaverton under the "Kassab Jewelers" tradename in 1987. (Id. at ¶ 3). Kassab Jewelers continuously used that trade name since that date. (Id.) Kassab Jewelers now has retail stores in Beaverton, Portland and Lake Oswego. (Id. at ¶ 4). Kassab Jewelers registered its name as mark with the United States Trademark Office in 1996. (Id. at ¶ 9). Two of Pierre Kassab's brothers also operate jewelry business in the Portland area. (Id. at ¶ 11). Joe Kassab operates "Joe Kassab Jewelers" and Elie Kassab operates "Prestige Jewelry Consultants." (Id.)

Defendant Chellis Kassab is the ex-wife of Joe Kassab and plaintiff asserts that she intends to open a jewelry business utilizing the names "Kassab Jewelers," "Kassab Design" and "C. Kassab Design." (Id. at ¶ 12).

Plaintiff sued Joe Kassab for trademark violations and lost in <u>Kassab Jewelers, Inc. and Pierre Kassab v. J. Kassab Jewelers and Custom Design, Inc. and Joe Kassab</u>, Multnomah County Case No. 9112-07940, judgment dated December 21, 1992. Consequently, when plaintiff filed his trademark application and affirmed that "no other person, firm, corporation or association, to the best

of his knowledge and belief, has the right to use such mark in commerce either in identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such person, to cause confusion, or to cause mistake, or to deceive. . . " defendant asserts that plaintiff was not truthful. 15 U.S.C. § 1051(1)(A). Additionally, under 15 U.S.C. § 1065, a trademark owner who seeks incontestability five years after registration must represent that "(1) there has been no final decision adverse to registrant's claim of ownership of such mark for goods or services, or the registrant's right to register the same. . . ." Here too, defendants assert that plaintiff was not candid. Plaintiff counters that when the suit was brought in 1992, the Kassab mark had not generated the goodwill and reputation that it has achieved now and, furthermore, by accumulating and licensing back the "Kassab" name to his brothers, plaintiff has garnered additional goodwill in the Kassab mark.

Defendants also argue that plaintiff has abandoned and acquiesced to others use of the mark "Kassab Jewelers" by permitting other entities to use the name Kassab in relation to jewelry for the past ten years. Plaintiff has only recently, i.e., in 2005, licensed to his brothers Elie and Joe use of the name Kassab. Prior to 2005, other jewelry businesses operated in

the Portland area using the "Kassab" name.  Defendant raises the additional defenses of collateral estoppel because of the earlier judgment against plaintiff and equitable estoppel/unclean hands because of the recent "no cost" licenses to his brothers.

## ANALYSIS

In a trademark case, a plaintiff is entitled to a preliminary injunction by demonstrating either "(1) a combination of 'probable success on the merits' and the 'possibility of irreparable injury;' or (2) the existence of 'serious questions going to the merits' and that 'the balance of hardships tips sharply in [plaintiff's] favor." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1204-1205 (9th Cir. 2000) (quoting Sardi's Restaurant Corp. v. Sardie, 755 F.2d 719, 723 (9th Cir. 1985). "These are not two distinct tests, but rather the opposite ends of a single continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." Rodeo Collection Ltd. v. W. Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987) (internal quotation omitted).

Defendants argue that the defenses of fraud, abandonment, and the application of equitable principles as provided in 15 U.S.C. § 1115(b)(1), (2) and (9) make plaintiff's success on the merits unlikely while the possibility of irreparable harm is too remote.

I.  **Probability of Success on the Merits**

To show probability of success on the merits, a plaintiff must establish that it is likely to be able to show a likelihood of confusion between the marks. GoTo.com, 202 F.3d at 1205. "If successfully demonstrated, irreparable injury to the plaintiff may be presumed." Nautilus Group, Inc. v. Icon Health and Fitness, Inc., 372 F.3d 1330, 1334 (9th Cir. 2004).

Trademarks (i.e., symbols used to identify and distinguish goods or services) and trade names (i.e., symbols used to distinguish companies, partnerships and businesses) are technically distinct; the major legal distinction between the two is that trade names cannot be registered and are therefore not protected under 15 U.S.C. § 1114. Cases like this one typically involve challenges to both trademarks and trade names. The Ninth Circuit has held that "likelihood of confusion is unquestionably the key to a finding of infringement in either case." Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1534-35 (9th Cir. 1989).

An eight-factor test is employed to determine whether there exists a likelihood of confusion. Those factors are:
(1) similarity of the marks; (2) proximity or relatedness of the goods or services; (3) strength of plaintiff's mark;
(4) marketing channels; (5) the degree of care likely to be

exercised by purchasers; (6) defendant's intent; (7) evidence of actual confusion; (8) likelihood of expansion. Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1999). Most of these so-called Sleekcraft factors are questions of fact. See Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1265 (9th Cir. 2001).

"Some factors are much more important than others and the relative importance of each individual factor will be case-specific." Brookfield, F.3d at 1054. In fact, "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors." Id.

The parties were prepared to offer live testimony at the preliminary injunction hearing to supplement their pleadings. The court considered such testimony unnecessary given the written record. Plaintiff demonstrates actual confusion by prospective customers. Thus, the court finds a likelihood of confusion does exist given this confusion and the similarity of the marks within the same market and profession.

Critical, however, to the strength of the mark is the question posited by the court during the hearing: does an assignment and license back of a mark strengthen or weaken a mark? After receiving the supplemental briefing and reviewing E & J Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280 (9th Cir.

1992), the court concludes that the assignment and license back here strengthened the "Kassab" mark. Consequently, the court finds the likelihood of success on the merits favors plaintiff.[1]

## II. Irreparable Injury and Balance of the Hardships

Defendant has not yet opened a jewelry store, though she has signed a lease and is preparing to open a store soon. Because of this posture, should defendant open her store, the balance of hardships would harm plaintiff as the existing Kassab enterprise which has invested time and money developing the "Kassab" mark for jewelry in the Portland metropolitan area may have its mark diluted. While defendant would suffer some deprivation from not being permitted to use her name, the costs she would incur during this start-up phase are less than the costs incurred to an open and on-going concern. As a result, the possibility of irreparable injury also favors plaintiff as an existing business.

Because the court finds a probability of success on the merits, balance of hardships, and irreparable injury all favor plaintiff, the court GRANTS plaintiff's motion for a preliminary injunction and enjoin defendants from using "Kassab" in their trade name, trademarks, and service marks.

---

[1] The court has reviewed the affidavit of John C. Etter dated April 25, 2005. The facts alleged in the affidavit may be useful in a motion for summary judgment context. At this stage, however, probability of success on the merits still favors plaintiff.

PAGE 7 - ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### III. Amount of Bond

Federal Rule of Civil Procedure 65(c) requires an applicant for a preliminary injunction to post security "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

The parties did not spend significant time discussing the amount of a bond, but given defendants' costs of starting a new business, the court orders a bond in the amount of $20,000.00.

## CONCLUSION

The court finds that the possibility of irreparable injury and the balance of the hardships favor plaintiff. The court concludes that plaintiff has demonstrated a reasonable probability of success on the merits.

The motion for a preliminary injunction(#3) is GRANTED. Plaintiff's motion for leave to file a supplemental complaint (#21) is GRANTED. Plaintiff's motion to strike (#23) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to defendant's third affirmative defense of fraudulent procurement but with leave to re-plead. The motion to strike is otherwise DENIED as issues of fact exist as to each counterclaim that make them more appropriately resolved by motions for summary judgment. Plaintiff's motion to dismiss defendants' amended counterclaim

(#25) is GRANTED with leave to re-plead.

Defendants are preliminarily enjoined from using "Kassab" as a business or trade name. Plaintiff shall post a bond with the clerk of court in the amount of $20,000.00.

IT IS SO ORDERED.

DATED:   Portland, Oregon, May 25, 2005

                                    /s/Michael W. Mosman
                                    MICHAEL W. MOSMAN
                                    United States District Judge